*NOT FOR PUBLICATON*

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| MELINA RODRIGUEZ,<br><br>        Plaintiff,<br><br>v.<br><br>RUDOLPH R. MAHARAJ, KEVIN ASADI,<br>and SLYVIA KALINOWSKI,<br><br>        Defendants. | Civil Action No. 3:20-cv-04666-FLW-ZNQ<br><br>**OPINION** |

**WOLFSON, Chief Judge:**

This matter arises out of a landlord-tenant dispute. *Pro se* Plaintiff Melina Rodriguez, a former tenant at 128 John Street, South Amboy, New Jersey, has sued her former landlord Slyvia Kalinowski and Kalinowski's attorneys, Rudolph R. Maharaj and Kevin Asadi (collectively, "Defendants"), for violating the Federal Fair Debt Collection Practice Act ("FDCPA") and the New Jersey Consumer Fraud Act ("NJCFA"). Specifically, Rodriguez alleges that Defendants unlawfully attempted to collect a $4,900 state court judgment relating to an eviction. Presently before the Court is Defendants' Motion to Dismiss for failure to state a claim.[1] For the following reasons, Defendants' motion is **GRANTED** and Rodriguez's claims are **DISMISSED** as to all Defendants.

---

[1]     In the alternative, Defendants filed for summary judgment and dismissal for lack of personal jurisdiction based on improper service. Having reviewed the papers, I need not reach the summary judgment motion. *Noble v. Maxim Healthcare Services, Inc.*, No. 12-2227, 2012 WL 3019443, at *5 (D.N.J. July 24, 2012) ("[A] court may consider extraneous documents to which a plaintiff refers in the complaint or on which he claims in the complaint were based without converting the motion to dismiss into one for summary judgment."); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). Additionally, while Defendants assert that Rodriguez did not properly serve them, they do not make any substantive arguments on that issue, so the Court deems it to be waived.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

For the purposes of this motion, the Court recounts only the facts relevant to the parties' present dispute.[2] Rodriguez entered into a one-year rental agreement with Kalinowski on July 1, 2019, for the duplex located at 128 John Street in South Amboy, New Jersey. *See* Compl., at 3. The tenancy "started out fine," Def. Mot., Ex. 3 (state court decision and order), but the parties' relationship soon became contentious over a heat issue. *See id.*

On October 31, 2019, Kalinowski filed a complaint to evict Rodriguez in Superior Court, Middlesex County, New Jersey, *id.*, Ex. 1; Compl., at 4, alleging that Rodriguez owed $1,650 in unpaid rent, a $50 late fee, $1,500 in attorneys' fees pursuant to a provision in the lease, and any further amount outstanding at the time of trial. Def. Br., Ex. 3. After a hearing on January 17, 2020, the state court ordered Rodriguez to pay $4,900, and formally entered judgment on January 21, 2020, when Rodriguez did not deposit that amount to prevent eviction. *Id.* The court then rejected Rodriguez's application for a stay pending appeal, *id.*, and the appellate division later dismissed the appeal for failure to prosecute. *Id.*, Ex. 4 (dismissal order).

Before trial in state court, on December 20, 2019, Rodriguez and her employer, through counsel, filed a federal action seeking $361,250 in damages for conversion after Kalinowski

---

2    The Court considers the allegations in Rodriguez's Amended Complaint as well as "exhibits attached to [it] and matters of public record," such as the state-court judgment. *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The Court also considers "undisputedly authentic document[s] that [Defendants] attach[] as an exhibit to [their] motion to dismiss," to the extent that Rodriguez's claims are based thereon. *Pension Benefit*, 998 F.2d at 1196. The Court further considers extrinsic documents that are integral to Rodriguez's Amended Complaint. *See Lum v. Bank of America*, 361 F.3d 217, 221 n.3 (3d Cir. 2003) ("In deciding motions to dismiss pursuant to Rule 12(b)(6), courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim."); *In re Burlington*, 114 F.3d at 1426 (explaining that a document forms the basis of a claim if the document is "integral to . . . the complaint"); *Shelley v. Wilson*, 339 Fed. App'x. 136, 137 n.2 (3d Cir. 2009). Indeed, particularly "in cases where a *pro se* plaintiff is faced with a motion to dismiss," as here, "it is appropriate for the court to consider materials outside of the complaint to the extent they are consistent with the allegations in [it]." *Donhauser v. Goord*, 314 F. Supp. 2d 119, 121 (N.D.N.Y. 2004) (citations omitted).

purportedly changed the locks at 128 John Street. *See Rodriguez, et al. v. Locks Spa, et al.*, No. 3:19-21728 (Dec. 20, 2019). Magistrate Judge Arpert issued a Report and Recommendation dismissing the Complaint without prejudice for failure to comply with "three separate Orders of this Court as well as for failure to prosecute this action." *Id.*, ECF No. 9. I adopted the Report in full on June 11, 2020. *Id.*, ECF No. 11. Rodriguez then initiated the instant action, *pro se*, on July 7, 2020, and amended her eight-page Complaint the next day.

The Court discerns two theories of liability in the Amended Complaint.[3] First, Defendants allegedly violated the FDCPA by attempting to collect the $4,900 state-court judgment through "'unknown caller' phone calls urging [Rodriguez] to 'pay her debt of $4,900.00 to her landlord and get her things.'" Compl., at 5-6. Second, Kalinowski allegedly violated the NJCFA by "renting a duplex apartment without a certificate of occupancy." *Id.* at 7. Defendants argue in their dismissal motion that they are not liable under either statute as a matter of law,[4] that Rodriguez has not pled

---

3      Rodriguez's Complaint vaguely references violations of the New Jersey Truth in Consumer Contract, Warranty, and Notice Act ("TCCWNA"), N.J.S.A. § 56:12-14, *et seq.*, unjust enrichment, emotional distress, fraud in the inducement, and a due process violation. Compl., at 1. While I must construe a *pro se* litigant's pleadings liberally, *see infra*, Rodriguez does not mention the TCCWNA, unjust enrichment, or emotional distress after page one, nor alleges any facts in connection with them. So, the Court does not construe her Complaint to assert these causes of action. Likewise, although Rodriguez mentions fraud in the inducement and due process more than once, she offers no relevant and non-conclusory facts for support. As to fraud, Fed. R. Civ. P. 9(b) provides that "the circumstances constituting fraud or mistake shall be stated with particularity," *id.*, yet Rodriguez spends one sentence on this issue, simply asserting that Kalinowski "did not have the legal authority to rent the duplex" and "misled" her. *See In re Rockefeller Ctr. Props, Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002) ("[P]laintiffs must use 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.") (internal quotation omitted); *California Public Employees' Retirement Sys. V. Chubb Corp.*, 394 F.3d 126, 144-46 (3d Cir. 2004) (describing the "heightened pleading standard" for fraud). As to due process, Rodriguez's threadbare conclusions of law cannot conceivably support a violation: *e.g.*, lack of jurisdiction in the state court, lack of standing on the part of the landlord to sue there, and an "illegal" rental contract. Compl., at 7. The Court therefore does not construe the Complaint to assert these causes of action either.

4      Rodriguez devotes essentially all of her opposition brief to the legality of the state court judgment itself. Because that allegation falls outside the scope of her Amended Complaint, I do not consider it, and it does not constitute a pleading. *See, e.g., Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in

plausible factual allegations in any event, and that New Jersey's entire controversy doctrine bars all claims.

## II.    LEGAL STANDARD

Under Fed. R. Civ. P. 12(b)(6), a court may dismiss an action if a plaintiff fails to state a claim upon which relief can be granted. *Id.* When evaluating a Rule 12(b)(6) motion, the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). A complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To determine whether a complaint is plausible, a court conducts a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Second, the court must identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 131 (quoting *Iqbal*, 556 U.S. at 679). For example, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of

---

opposition to a motion to dismiss.") (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984), *cert. denied*, 470 U.S. 1054 (1984)); *Mast v. Lafayette College*, 2015 WL 409774, at *3 (E.D. Pa. Jan. 30, 2015) (stating, in the context of a *pro se* pleading, that "courts may not consider facts alleged in an opposition to a motion to dismiss rather than in the complaint itself"). Even if I were to consider it, the *Rooker-Feldman* doctrine may bar a federal court from exercising subject matter jurisdiction over a claim challenging a state court judgment directly. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). Assuming further that *Rooker-Feldman* did not apply, *see Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005) ("confining" the doctrine to "narrow ground"), New Jersey's entire controversy doctrine may bar relief. *See infra*.

action will not do," *Iqbal*, 556 U.S. at 678, nor am I compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). Third, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Santiago*, 629 F.3d at 131 (quoting *Iqbal*, 556 U.S. at 680). This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Finally, because Rodriguez has filed her Complaint *pro se*, I must construe it liberally and in the interests of doing substantial justice. *See, e.g.*, *Higgs v. AG of the United States*, 655 F.3d 333, 339 (3d Cir. 2011) ("The obligation to liberally construe a *pro se* litigant's pleadings is well-established."); *Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004) ("Courts are to construe complaints so as to do substantial justice, keeping in mind that *pro se* complaints in particular should be construed liberally."); *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d. Cir. 2003) ("apply[ing] the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name," on a motion to dismiss) (citations omitted). Even so, I am not required to credit "bald assertions" or "legal conclusions" simply because Rodriguez is proceeding *pro se*. *See Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997). A *pro se* complaint may just as readily be dismissed if the allegations it sets forth cannot be construed to supply facts supporting a claim for relief. *See Milhouse v. Carlson*, 652 F.2d 371, 373 (3d Cir. 1981); *Grohs v. Yatauro*, 984 F. Supp. 3d 273, 282 (D.N.J. 2013).

## III.    DISCUSSION

The gist of Defendants' dismissal motion is that Rodriguez asserts theories of liability—*i.e.*, the FDCPA and NJCFA—which simply do not apply to Defendants' conduct. *See* Def. Br., at

4-6. Specifically, Defendants argue, the FDCPA is inapplicable because they are not debt collectors and did not seek payment of the $4,900 judgment, much less in a way that violates a provision of the FDCPA, and Rodriguez has not demonstrated that the NJCFA applies to these circumstances. *Id.* at 8. Defendants add that New Jersey's entire controversy doctrine bars Rodriguez's claims. *Id.*

A. *The FDCA Claim*[5]

Congress enacted the FDCPA in 1997 to remedy abusive debt-collection practices. 15 U.S.C. § 1692(a); *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006). The FDCPA prohibits intentionally harassing, oppressive, or abusive conduct, 15 U.S.C. § 1692d, false, deceptive, or misleading representations, *id.* § 1692e, and unfair or unconscionable means. *Id.* § 1692f. The Act creates a private cause of action against debt collectors who violate its provisions. *Id.* § 1692k. To survive dismissal on an FDCPA claim, a plaintiff must plausibly allege that "(1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014); *Jensen v. Pressler & Pressler*, 791 F.3d 413, 417 (3d Cir. 2015).

---

5    Because Defendants could not attempt to collect the $4,900 judgment until after the state court entered it, and hence the FDCPA claim had not yet accrued at the time of the eviction proceeding, unlike the NJCFA claim, *see infra*, the FDCPA claim is not barred by New Jersey's entire controversy doctrine. *Accord Tobing v. Parker McCay, P.A.*, No. 17-00474, 2018 WL 2002799, at *7 (D.N.J. Apr. 30, 2018) (declining to apply the doctrine to an FDCPA claim that arose during foreclosure proceedings); *McNally v. Providence Washington Ins. Co.*, 304 N.J. Super. 83 (App. Div. 1997) (holding that the doctrine does not bar successive claims if they accrued after the pendency of the original action); *Riemer v. St. Clare's Riverside Med. Ctr.*, 300 N.J. Super. 101 (App. Div. 1997) (holding that the doctrine does not bar "related claims which were unknown, or had not arisen or accrued during the pendency of the original action").

Rodriguez is a consumer, 15 U.S.C. § 1692a(3) (defining consumer as "any natural person obligated to pay any debt"), and a judgment such as the one obtained by Kalinowski is a debt under the FDCPA. *Id.* § 1692a(5) (defining debt as "any obligation to pay money arising out of a transaction"). Even if not reduced to judgment, various courts have held that back rent constitutes a debt for the purposes of the FDCPA. *See, e.g.*, *Romea v. Heiberger & Associates*, 163 F.3d 111, 115 (2d Cir. 1998) (Calabresi, J.); *Livingstone v. Haddon Point Manager, LLC*, No. 19-13412, 2020 WL 902218, at *5-6 (D.N.J. Feb. 25, 2020) (applying the Third Circuit's "three-prong test" in *St. Pierre v. Retrieval-Masters Creditors Bureau, Inc.*, 898 F.3d 351, 360-61 (3d Cir. 2018)). Rodriguez's FDCPA claim therefore turns on whether Defendants are debt collectors under the Act and whether they attempted to collect the $4,900 judgment in a manner prohibited by it.

Rodriguez alleges in her Amended Complaint that someone called her instructing her to pay the $4,900 judgment, and on that basis alone, the caller is a debt collector. She does not plead any other facts relevant to the FDCPA. Notwithstanding Rodriguez's failure to allege the identity of the caller, which alone dooms her claim, Defendants argue that none of them is a debt collector as a matter of law. Under the FDCPA, a debt collector is "any person . . . who regularly collects or attempts to collect . . . debts owed or due . . . to another." 15 U.S.C. § 1692a(6). To the extent that Kalinowski, the former landlord, attempted to collect the judgment on her own behalf, she is a creditor. *See, e.g.*, *Staub v. Harris*, 626 F.2d 275, 277 (3d Cir. 1980) ("The [FDCPA] does not apply to persons or businesses collecting debts on their own behalf."); *Brannigan v. Harrison*, No. 15-2991, 2018 WL 1942520, at *7 (D.N.J. Apr. 24, 2018) (same); *see also Aubert v. American Gen. Fin., Inc.*, 137 F.3d 976, 978 (7th Cir. 1998) ("Creditors who collect in their own name and whose principal business is not debt collection . . . are not subject to the Act."). Creditors can nevertheless be classified as debt collectors if they "use[] any name other than [their] own which

would indicate that a third person is collecting or attempting to collect such debts." 15 U.S.C. § 1962(a)(6); *Jarzyna v. Home Properties*, 763 F. Supp. 2d 742, 751 (E.D. Pa. 2011) (stating that an "exempt" creditor-landlord can be "place[d] back into [the FDCPA's] ambit"). But Rodriguez has not pled any facts suggesting that Kalinowski attempted to collect the $4,900 judgment in this manner.

Law firms, on the other hand, are debt collectors if they "regularly engage in debt collection." *Piper v. Portnoff Law Associates*, 396 F.3d 227, 232 (3d Cir. 2005); *see also Heintz v. Jenkins*, 514 U.S. 291, 299 (1995). This includes law firms that engage in debt collection litigation, *see Simon v. FIA Card Services, N.A.*, 732 F.3d 259 (3d Cir. 2013), file judicial foreclosure complaints, *see In re Ogilvie*, 533 B.R. 460, 467 (Bankr. M.D. Pa. 2015), attempt to collect back rent from delinquent tenants or prosecute eviction actions, *see Crenshaw v. Computex Info. Servs., Inc.*, No. 10-1493, 2011 WL 1640175, at *4-5 (D.N.J. Apr. 30, 2011), and/or initiate "summary dispossess actions." *See Hodges v. Sasil Corp.*, 189 N.J. 210, 224-25 (2007) (calling this a "powerful debt collection mechanism" because the tenant understands "the summons and complaint [for an eviction proceeding] to be a demand for payment of rental arrears").

As a preliminary matter, Maharaj and Asadi emphasize that Rodriguez "has not named" their law firm as a defendant, thus implying that they cannot *individually* be deemed debt collectors under the FDCPA. Def. Br., at 5-6. That is not correct. An individual attorney acting within a firm is a debt collector if the individual "exercise[s] control over the affairs" of the firm in attempting to collect a debt. *Piper v. Portnoff Law Associates*, 274 F. Supp. 2d 681, 690 (E.D. Pa. 2003) (citing *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 405 n.29 (3d Cir. 2000)); *Livingstone*, 2020 WL 902218, at *6 (declining to dismiss a complaint alleging an individual attorney violated the FDCPA). Indeed, "attorney debt collectors warrant closer scrutiny because their abusive

collection practices 'are more egregious than those of lay collectors.'" *Campuzano-Burgos v. Midland Credit Mgmt.*, 550 F.3d 294, 301 (3d Cir. 2008) (explaining why debtors "react more quickly to an attorney's communications"); *see also Rosenau v. Unifund Corp.*, 539 F.3d 218, 223 (3d Cir. 2008) ("[T]he categories of 'debt collector' and 'attorney' are not mutually exclusive."). Based on the Amended Complaint, it is plausible that Maharaj and Asadi exercised control over their law firm's affairs when they litigated the dispossession action against Rodriguez, and are debt collectors to that extent. In fact, they admit in their motion that they were "instrumental in obtaining a judgment for possession and money judgment against [Rodriguez] in [the instant] landlord/tenant manner," Def. Br., at 6, and that they "primarily handle cases including landlord/tenant" disputes such as this one. *Id.*

Next, Maharaj and Asadi argue that Rodriguez has not plausibly alleged that they ever attempted to collect the $4,900 judgment, much less violated a provision of the FDCPA in doing so. I agree. Based on Rodriguez's Amended Complaint, the only conduct which might possibly violate a provision of the FDCPA is the unspecified number of phone calls from an unknown caller telling Rodriguez to pay the $4,900 judgment and retrieve her possessions from 128 John Street. *See* Compl., at 5. Assuming these calls constitute "communications" under the FDCPA, 15 U.S.C. § 1692a(2) (defining a "communication" as any conduct "conveying [] information regarding a debt . . . to any person through any medium"), Rodriguez offers no facts linking them to Maharaj, Asadi, or their law firm. Assuming further that Maharaj, Asadi, or their firm made the calls, Rodriguez offers no facts alleging how the calls violate the FDCPA.

To determine whether a communication from a debt collector violates the FDCPA, a court must analyze the communication from the perspective of the "least sophisticated debtor," *Brown*, 464 F.3d at 454; *Campuzano-Burgos*, 550 F.3d at 301, so as to protect "all consumers, the gullible

as well as the shrewd." *Rosenau*, 539 F.3d at 221. Although the "least sophisticated debtor" standard sets a lesser bar than the reasonable person standard, it nonetheless "prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care." *Wilson v. Quadramed Corp.*, 225 F.3d 350, 355 (3d Cir. 2000).

Rodriguez has not connected the alleged phone calls to any particular provision of the FDCPA, but because she is *pro se*, I will assume that two might apply. *See Dluhos*, 321 F.3d at 369 (instructing courts to "apply the applicable law, irrespective of whether the *pro se* litigant has mentioned it"). First, a debt collector "may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e (listing sixteen examples of prohibited conduct); *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426-27 (3d Cir. 2018) (explaining that the list is non-exhaustive). Here, Rodriguez does not explain how the phone calls—in which the caller apparently stated nothing more than "pay [your] debt of $4,900.00 to [your] landlord and get [your] things"—could conceivably be false, deceptive, or misleading, except to the extent that she disputes the legality of the state court judgment itself, an issue which is not before the Court. Nor does Rodriguez describe anything else about the content of the calls from which I could conclude that they run afoul of 15 U.S.C. § 1692e.

Perhaps more applicable here, a debt collector may not engage in "any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of the debt." *Id.* § 1692d. To this end, a debt collector may not "[c]aus[e] a telephone to ring or engag[e] any person in telephone conversation repeatedly or continuously with the intent to annoy, abuse, or harass any person at the called number." *Id.* § 1692d(5); *Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029, 1036 (2019) (interpreting this provision to prevent "repetitive,

annoying phone calls"). For the purpose of the FDCPA, "continuously" means "making a series of telephone calls, one right after the other," and repeatedly means "calling with excessive frequency under the circumstances." *Kromelbein v. Envision Payment Solutions, Inc.*, No. 11-1598, 2013 WL 3947109, at \*4 (M.D. Pa. Aug. 1, 2013) (citations omitted). There is no precise test to determine whether a debt collector acted with the requisite intent, but courts look to the volume, frequency, pattern, and substance of the calls. *Nyce v. Sterling Credit Corp.*, No. 11-5066, 2013 WL 1388051, \*4 (E.D. Pa. Apr. 3, 2013). In this respect, "[c]ourts have held that the date and contents of each alleged communication in violation of the FDCPA must be pled with particularity" to defeat a motion to dismiss. *Townsend v. Chase Bank USA, N.A.*, No. 08-00527, 2009 WL 426393, at \*2 (C.D. Cal. Feb. 15, 2009) (collecting cases so holding, and granting a motion to dismiss for providing "only vague descriptions").

The Amended Complaint does not contain any factual matter whatsoever regarding the frequency, pattern, nature, substance, volume, or context of the calls. Rodriguez does not state the phone number(s) from which the calls were made, how many calls occurred over what period of time, when the calls occurred (*e.g.*, day of the week and time of day), the timing (*e.g.*, back-to-back or spread apart), whether the same person called each time, whether Rodriguez ever spoke to the caller or asked the caller not to call again, whether the caller talked to anyone else in the home, or any other relevant information. Such bare-bones allegations cannot support a claim for relief under the FDCPA, even assuming that Maharaj, Asadi, or their law firm in fact made the calls. *Accord Johns*, *Northland Group, Inc.*, 76 F. Supp. 3d 590, 601-02 (E.D. Pa. 2014) (dismissing a complaint, listing similar deficiencies, and concluding that the plaintiff did not "describe[] with particularity a single phone call she received").

In sum, even under the "least sophisticated debtor" standard, and bearing in mind that "the FDCPA is a remedial statute" which "the Third Circuit has construed . . . broadly so as to give effect to its purpose," *Brown*, 464 F.3d at 453; *Fleming v. Associated Credit Services*, 342 F. Supp. 3d 563, 579 (D.N.J. 2018) (emphasizing this "interpretive principle"), I cannot find facts in the Amended Complaint plausibly alleging that Maharaj, Asadi, or their firm ever attempted to collect the $4,900 judgment, much less engaged in prohibited conduct under the FDCPA. The Court dismisses Rodriguez's FDCPA claim against all Defendants.

B. *The NJCFA Claim*

Rodriguez also asserts a violation of the NJCFA, claiming that Kalinowski rented the duplex at 128 John Street without a Certificate of Occupancy, which many towns in New Jersey require for every new tenant, and to that extent, could not seek back rent or obtain the $4,900 judgment in the first place. *See* Compl., at 4, 7. Defendants argue that none of them is liable under the NJCFA because Rodriguez "fails to allege a factual basis which satisfies any [ ] element" of that statute.[6] Def. Br., at 8. They also argue that Rodriguez is barred from raising this claim by New Jersey's entire controversy doctrine. *Id.* I agree.[7]

The preclusive effect of a state court judgment in a subsequent federal action, as here, depends on the law of the state that adjudicated the original action, in this case New Jersey.

---

[6]    The purpose of the NJCFA is to protect consumers "by eliminating sharp practices and dealings in the marketing of merchandise and real estate." *Channel Cos., Inc. v. Britton*, 167 N.J. Super. 417, 418 (App. Div. 1979). New Jersey courts "construe the Act liberally in favor of consumers." *Lee v. First Union Nat. Bank*, 199 N.J. 251, 257 (2009) (quotation marks omitted). Whether the NJCFA applies in a particular case "hinges on the nature of [the] transaction." *Papergraphics Intern., Inc. v. Correa*, 389 N.J. Super. 8, 13 (App. Div. 2006). To state a claim under the NJCFA, a plaintiff must plausibly allege (1) that the defendant committed an "unlawful practice" as defined by the Act; (2) an ascertainable loss; and (3) that the unlawful conduct caused the ascertainable loss. *See Bonnieview Homeowners Ass'n, LLC v. Woodmont Builders, L.L.C.*, 655 F. Supp. 2d 473, 504 (D.N.J. 2009).

[7]    Although the entire controversy doctrine is an affirmative defense, it is appropriate to consider it on a dismissal motion where, as here, the necessary facts are "apparent on the face of the complaint" and other related documents. *Rycoline Products, Inc. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997).

*See Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 357 (3d Cir. 1999) ("To determine the preclusive effect of [the plaintiff's] prior state action we must look to the law of the adjudicating state."); *Smith v. Hillside Village*, 279 F. Supp. 3d 537, 545 (D.N.J. 2017) (analyzing the entire controversy doctrine in the context of an eviction); *Litgo N.J., Inc. v. Comm'r N.J. Dep't of Envtl. Prot.*, 725 F.3d 369, 400 n.2 (3d Cir. 2013) (deriving this rule from the Full Faith and Credit Act); *see also Allen v. McCurry*, 449 U.S. 90, 96 (1980).

New Jersey's entire controversy doctrine is "an extremely robust claim preclusion device that requires adversaries to join all possible claims stemming from an event or series of events in one suit." *Chavez v. Dole Food Co.*, 836 F.3d 205, 228 n.130 (3d Cir. 2016); *Ricketti v. Barry*, 775 F.3d 611, 613 (3d Cir. 2014) (collecting cases holding that "[n]o principle of law is more firmly established"). It "requires a party to bring in one action all affirmative claims that it might have against another party or be forever barred from bringing a subsequent action involving the same underlying facts." *Opdycke v. Stout*, 233 Fed. App'x. 125, 129 (3d Cir. 2007); *Rycoline Prods., Inc. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997) (describing it as "New Jersey's specific, and idiosyncratic, application of . . . res judicata").

In determining whether Rodriguez's NJCFA claim should be barred under New Jersey's entire controversy doctrine, "the central consideration is whether the claims . . . arise from related facts or the same transaction or series of transactions." *Wadeer v. New Jersey Mfrs. Ins. Co.*, 220 N.J. 591, 605 (2015) (citing *DiTrolio v. Antiles*, 142 N.J. 253, 268 (1995)). "It is the core set of facts that provides the link between distinct claims against the same parties . . . and triggers the requirement that they be determined in one proceeding." *DiTrolio*, 142 N.J. at 267-68. There need not be any "commonality of legal issues . . . or remedies." *Id.* at 271; *Bennun v. Rutgers State Univ.*, 941 F.2d 154, 163 (3d Cir. 1991) (applying the doctrine "when there was a previous state-

court action involving the same transaction"); *Smith*, 279 F. Supp. 3d at 546 (applying the doctrine to "extinguish[] any subsequent federal-court claim that could . . . have been joined"). The requirements of the entire controversy doctrine are clearly satisfied here,[8] since the state eviction action proceeded to final judgment and Rodriguez's NJCFA claim arises from the same underlying transaction.[9] Rodriguez's NJCFA claim is dismissed as to all Defendants.

## IV. CONCLUSION

---

[8]      Under N.J. Ct. R. 6:3-4(a), "summary actions between landlord and tenant for the recovery of premises shall not be joined with any other cause of action, nor shall a defendant in such proceedings file a counterclaim or third-party complaint." *Id.* This may narrow the scope of the entire controversy action. *See, e.g.*, *Smith*, 279 F. Supp. 3d at 547 (holding that an action for summary possession had no preclusive effect on a Federal Housing Act claim); *Housing Authority of Morristown v. Little*, 135 N.J. 274, 280 (1994) ("The only remedy that can be granted in a summary dispossess proceeding is possession."); *147 Broadway Corp. v. Robinson*, 2008 WL 2663751, at *2 (App. Div. 2008) ("[N]either a landlord nor tenant are precluded from seeking to recover money damages in a subsequent proceeding."). Even so, I do not find that Rule 6:3-4(a) forecloses the entire controversy doctrine here. First, after Kalinowski filed for eviction, Rodriguez filed a show-cause order asserting a counterclaim, received a hearing on it, reached a settlement, and renewed it in a subsequent hearing. The state court then merged Rodriguez's complaint with Kalinowski's, and "fully tried" both in the January 17, 2020, hearing. *See* Def. Br., Ex. 2. Critically, in that hearing, Rodriguez *did* raise issues regarding the Certificate of Occupancy. *Id.* Second, the entire controversy doctrine is fundamentally a matter of equity which seeks to promote "conclusive determinations, party fairness, and judicial economy and efficiency," and which requires courts to analyze "the totality of the circumstances." *K-Land Corp. No. 28 v. Landis Sewerage Auth.*, 173 N.J. 59, 70 (2002). Relevant circumstances include whether the party against whom preclusion is sought could have "obtained review of the prior judgment," whether it was "foreseeable at the time of the prior action that the issue would arise in subsequent litigation," whether the precluded party had "an adequate opportunity to obtain a full and fair adjudication in the prior action," and the nature of "the procedures in the two actions." *Olivieri v. Y.M.F. Carpet, Inc.*, 186 N.J. 511, 523 (2006); *see also Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 137 (3d Cir. 1999) ("As an equitable doctrine, [the doctrine's] application is flexible, with a case-by-case appreciation for fairness to the parties."). These factors counsel in favor of barring Rodriguez's NJCFA claim.

[9]      Even if the entire controversy doctrine did not apply, there is no basis in the Amended Complaint for finding that Maharaj or Asadi had anything to do with leasing the duplex in the first place, or ever engaged in a transaction with Rodriguez such that the NJCFA would apply to their conduct. Nor is there factual support for the claim that Kalinowski's failure to obtain a Certificate of Occupancy violates the NJCFA. First, although the NJCFA applies to landlord-tenant relationships generally, "there may be some question as to [whether it applies to] the isolated rental of an apartment" like the duplex at 128 John Street. *49 Prospect Street v. Sheva Gardens*, 227 N.J. Super. 449, 465 (App. Div. 1988) (singling out commercial renters for liability under the NJCFA); *cf. Torres v. Mbogo*, No. 4671-18, 2020 WL 6112958, at *3 (App. Div. Oct. 16, 2020) (concluding that a tenant did not owe back rent due to the landlord's failure to obtain a Certificate of Occupancy, but not under the NJCFA). Second, even if a cause of action did exist against Kalinowski, the NJCFA "will only apply to extreme conduct . . . sufficient to meet the condemned commercial practices set forth in N.J.S.A. 56:8-2." *49 Prospect Street*, 227 N.J. Super. at 469. Rodriguez has not pled any facts alleging that Kalinowski's failure to obtain an occupancy certificate rises to that level.

14

For the foregoing reasons, I find that no plausible reading of Rodriguez's Amended Complaint entitles her to relief under the FDCPA or NJCFA against any Defendant. Since Rodriguez has not properly pled any other theories of liability, Defendants' Motion to Dismiss is **GRANTED**, Rodriguez's Amended Complaint is **DISMISSED**.

<u>/s/ Freda L. Wolfson</u>
Hon. Freda L. Wolfson
U.S. Chief District Judge

15